UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

VICKIE LEAVITT DURAN,

    Petitioner,

v.

NEVADA DIVISION OF PAROLE AND PROBATION, et al.,

    Respondents.

Case No.: 2:21-cv-00582-APG-BNW

**Order Dismissing Grounds for Relief and Directing Petitioner to Show Cause**

[ECF No. 1]

## I. Introduction

This is a habeas corpus action under 28 U.S.C. § 2254. Previously, Judge Navarro directed petitioner Vickie Duran to pay the filing fee, which she did.[1] I have reviewed the petition under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. I will dismiss two grounds because they lack merit. Additionally, Duran must show cause why I should not dismiss this action as untimely.

## II. Background

Duran was convicted by a jury of driving under the influence causing death, leaving the scene of an accident causing injury, and child endangerment. She appealed, and the Supreme Court of Nevada affirmed on July 14, 2011.[2] Duran filed her first post-conviction habeas corpus petition in the state district court on June 12, 2012. That court denied the petition on

---

[1] ECF No. 4.

[2] ECF No. 1-1 at 75. For ease of reference, I cite mostly to the procedural history in the state district court's denial of Duran's second post-conviction habeas corpus petition.

April 10, 2013. Duran appealed, and the Supreme Court of Nevada affirmed on February 27, 2014. Remittitur issued on March 24, 2014.[3]

Duran moved to vacate the judgment of conviction in the state district court on March 21, 2014. The motion was denied on May 13, 2014. Duran appealed, and the Supreme Court of Nevada affirmed on September 18, 2014. Remittitur issued on October 17, 2014.[4]

Duran filed a petition for a writ of mandamus in the Supreme Court of Nevada on January 14, 2015. That petition was denied on February 12, 2015. A notice in lieu of remittitur issued on March 9, 2015.[5]

Duran then filed a motion to dismiss three felony charges in the state district court on May 21, 2015. The motion was denied on June 11, 2015.[6]

More than three years passed before Duran filed her second post-conviction habeas corpus petition in the state district court on September 18, 2018.[7] The court dismissed the petition as untimely and successive on December 18, 2018.[8] Duran appealed, and the Nevada Court of Appeals affirmed on February 11, 2020.[9] Remittitur issued on March 9, 2020.[10]

This court received Duran's petition under 28 U.S.C. § 2254 on April 8, 2021.

---

[3] *Id.*

[4] *Id.*

[5] ECF No. 1-1 at 69. I also take judicial notice of the online docket of the Supreme Court of Nevada, Case No. 67212. http://caseinfo.nvsupremecourt.us/public/caseView.do?csIID=35414.

[6] ECF No. 1-1 at 76.

[7] *Id.*

[8] ECF No. 1-1 at 74.

[9] ECF No. 1-1 at 84.

[10] I take judicial notice of the online docket of the Supreme Court of Nevada, Case No. 78055. http://caseinfo.nvsupremecourt.us/public/caseView.do?csIID=54449&combined=true.

## III. Discussion

### A. Ground 1 is without merit

In ground 1, Duran claims that she is actually innocent. The Supreme Court of the United States has not clearly established whether a free-standing claim of actual innocence exists in non-capital cases like this case.[11] Duran presented this claim in her state post-conviction habeas corpus petition. The state district court determined that the claim had no merit.[12] On appeal, the Supreme Court of Nevada affirmed.[13] Because the Supreme Court of the United States has not clearly established whether an actual-innocence claim exists, the state-court determinations cannot be contrary to, or unreasonable applications of, clearly established federal law.[14] Ground 1 is without merit, and I dismiss it.

### B. Ground 3 is without merit

Ground 3 complains about misconduct by the respondents' counsel, ineffective assistance of Duran's post-conviction counsel, and court errors, all in Duran's second state post-conviction habeas corpus proceedings. Errors in the state post-conviction proceedings are not addressable in federal habeas corpus.[15] Additionally, Duran does not have a right to effective assistance of counsel in state post-conviction proceedings.[16] Ground 3 is without merit, and I dismiss it.

---

[11] *Herrera v. Collins*, 506 U.S. 390, 416-17 (1993).

[12] ECF No. 1-1 at 22-23.

[13] ECF No. 1-1 at 64.

[14] *Carey v. Musladin*, 549 U.S. 70, 77 (2006). *See also* 28 U.S.C. § 2254(d)(1).

[15] *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989).

[16] *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987)).

## C. The petition is untimely

Duran had one year from the date her judgment of conviction became final to file a § 2254 habeas corpus petition.[17] Duran appealed the judgment of conviction, and thus it became final on October 12, 2011, when the time to petition the Supreme Court of the United States for a writ of certiorari expired.[18]

Time that Duran spent on properly filed state habeas corpus petitions or other state motions for collateral review did not count toward that one-year period.[19] Duran filed three petitions or motions that qualified for tolling.

Duran's first state post-conviction habeas corpus petition qualified for tolling. She filed her first state petition on June 12, 2012, which was 243 days after her judgment of conviction became final. The limitation clock then stopped while the first state petition was pending. The first state post-conviction petition concluded on March 24, 2014, when the Supreme Court of Nevada issued its remittitur.

I assume that Duran's motion to vacate the judgment of conviction qualified for tolling. Duran filed this motion on March 21, 2014, while her first state post-conviction petition was pending. Consequently, tolling under 28 U.S.C. § 2244(d)(2) continued while the motion to vacate was pending. The proceedings on the motion to vacate concluded on October 17, 2014, when the Supreme Court of Nevada issued its remittitur.

I assume that Duran's petition for a writ of mandamus, filed with the Supreme Court of Nevada, qualified for tolling. Duran filed her petition on January 14, 2015, which was 88 days

---

[17] 28 U.S.C. § 2244(d)(1)(A).

[18] *Jimenez v. Quarterman*, 555 U.S. 113, 119-20 (2009). See also Sup. Ct. R. 13(1).

[19] 28 U.S.C. § 2244(d)(2).

after the proceedings on her motion to vacate concluded. The limitation clock then stopped while the mandamus petition was pending. The mandamus petition concluded when the Supreme Court of Nevada issued its notice in lieu of remittitur on March 9, 2015.

At that point, 331 days of the one-year period already had passed. In the remaining time, Duran filed no post-conviction petitions or other motions for collateral review in the state courts. The one-year period expired at the end of Monday, April 13, 2015.[20]

Duran's motion to dismiss felony charges, filed on May 21, 2015, did not qualify for tolling. The one-year period already had expired, and no time remained to be tolled.[21]

Duran's second state post-conviction habeas corpus petition, filed on September 18, 2018, did not qualify for tolling. First, as with the motion to dismiss felony charges, the one-year period already had expired, and no time remained to be tolled.[22] Second, the second state petition was untimely under Nev. Rev. Stat. § 34.726(1), and an untimely state petition is not properly filed within the meaning of 28 U.S.C. § 2244(d)(2).[23]

Duran was out of prison on parole when she commenced this action. This court received her federal petition on April 8, 2021. This is almost six years after expiration of the one-year period. Her petition is untimely.

### D. Duran has not demonstrated actual innocence

Ground 1 of the petition is a claim of actual innocence. I am dismissing the claim because a free-standing claim of actual innocence is not clearly established, as discussed above.

---

[20] *See* Fed. R. Civ. P. 6(a)(1)(C) (extending period until the end of the first day that is not a Saturday, Sunday, or legal holiday).
[21] *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).
[22] *Id.*
[23] *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).

5

However, actual innocence can excuse an untimely petition.[24] "'[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"[25] "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."[26]

For the evidence presented at trial, I quote from the state district court's denial of the first state post-conviction habeas corpus petition, which Duran has attached and thus incorporated into her current federal petition:

> 5. At approximately 12:06 A.M. on October 17, 2009, Claudia Zepeda (Zepeda) was driving her 1999 Honda sedan at the intersection of New World Avenue and S. Nellis Boulevard. Zepeda, who had her ten month old son Esteban strapped into a car seat in the back seat, began to turn left onto Nellis after cautiously looking both ways. Prior to beginning her turn, Zepeda observed some headlights in the distance, but they were very far away. Zepeda executed her turn at a speed of 10-20 miles per hour (MPH), ending up in the left most lane driving south on Nellis. Immediately after executing the turn, Defendant's 2003 Toyota Sequoia sport utility vehicle (SUV) slammed into the rear or Zepeda's car; the impact caused Zepeda to lose consciousness.
>
> 6. Prior to striking Zepeda's four-door sedan, Defendant had been traveling southbound on Nellis at a speed at least in excess of fifty-seven (57) MPH. [Footnote 1: This speed estimate would likely be substantially higher had post-accident reconstruction been able to factor in crush damage inflicted on Zepeda's car.] Defendant's ten-year-old son, Cooper Pearson, was also in the SUV. Prior to impact, Defendant took no evasive action, never stopped accelerating, and only hit her brakes at the very last instant before slamming into Zepeda. The impact propelled Zepeda's car three hundred and twelve (312) feet down the road and collapsed part of its rear. Defendant's vehicle caused an approximate three-foot intrusion into the rear of Zepeda's vehicle, which inflicted

---

[24] *McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013).
[25] *Id*. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).
[26] *Bousley v. United States*, 523 U.S. 614, 623 (1998).

fatal injuries to Esteban who would later be pronounced dead at the hospital.

7. After the collision, Defendant fled the scene approximately 150-200 meters (or two football fields) southbound on Nellis, finally pulling into a business parking lot. A witness to the collision, Chad Hudson, located Defendant and her son in her damaged SUV in the parking lot. Defendant exited the vehicle and Hudson immediately noticed the strong odor of alcohol when she spoke. While Hudson called 911 to report the location of the second vehicle, Defendant decided to again flee the scene; she got back into her damaged SUV and unsuccessfully attempted to start its ignition. Hudson told Defendant not to leave and that she had to wait for emergency medical services to arrive. Defendant told Hudson: "I don't know why I have to wait here, I'm the victim. I need to leave at this time." Defendant then told her son to get out of the car and that they would walk home. Defendant became increasingly excited to leave the scene as she observed the approach of emergency vehicles. She told her son several times that they were leaving the scene, but each time Hudson instructed them not to leave.

8. Las Vegas Metropolitan Police Department (LVMPD) officers, Sergeant Raymond Weaver and Officer Joel Cranford, arrived at Defendant's location. Sergeant Weaver spoke with Defendant and noticed she smelled of alcohol. Defendant informed Sergeant Weaver that she had consumed ten (10) beers. Upon contacting Defendant, Officer Cranford noticed the strong odor of alcohol, that her eyes were bloodshot, her speech was slurred, and she had difficulty maintaining her balance. Officer Cranford then administered several field sobriety tests, which Defendant failed. He then arrested Defendant for DUI. LVMPD officers transported Defendant to the Clark County Detention Center for a blood test, which revealed her blood alcohol concentration (BAC) to be .315. A subsequent blood draw one hour later revealed Defendant's BAC to be .295.[27]

---

[27] ECF No. 1-1 at 20-22 (citations omitted).

7

These facts were sufficient for a rational jury to find Duran guilty of driving under the influence causing death,[28] leaving the scene of an accident causing injury,[29] and child endangerment.[30]

Duran's argument for actual innocence relies on the following evidence:

(1) Photographs show that she struck the Honda in the right rear bumper, indicating that Zepeda had not yet completed her turn.

(2) LVMPD falsified the area of initial collision, as shown by the Honda's skid marks being only 20 feet from the area of initial collision.

(3) Two accident reconstructions were done with diagrams that could not comport with the damage to the Honda's right rear bumper.

(4) A photograph not shown to the jury shows debris still in the true area of initial collision two weeks later.

(5) A LVMPD collision investigation narrative shows where Duran's SUV started leaking radiator fluid, which would have shown the true area of initial collision.

(6) Crush calculations for a 1990 Honda show that the prosecution and the defense falsified the speed at which Duran was traveling.

(7) The jury never knew that Duran tried to pull off to the right, but she could not because the Honda's rear bumper was stuck to her SUV and kept her from turning right.

(8) The jury was shown an altered photo of the Honda showing that its rear bumper was removed.

---

[28] Nev. Rev. Stat. § 484C.130(1).

[29] Nev. Rev. Stat. § 484E.010(1). Duran was charged with violating the former versions of these statutes, prior to the revision and reorganization of Chapter 484 of the Nevada Revised Statutes.

[30] Nev. Rev. Stat. § 200.508(1)(b)(1).

8

(9) A reverse linear progression of Duran's BAC would mean that she would have been at lethal or unconscious levels at the time of the collision.[31]

Duran does not persuade me. As noted above, actual innocence means factual innocence, not legal insufficiency.[32] The evidence listed above, along with the evidence at the trial, does not establish factual innocence. The new evidence does not even undermine the sufficiency of the evidence that the jury used to support its verdicts.

Even with what Duran claims is evidence that was concealed, certain facts are indisputable. Duran was well above the legal limit of blood-alcohol content for driving her SUV. Duran put her son into her SUV. Duran drove and collided with Zepeda. Duran killed Zepeda's baby. Duran then drove away into a parking lot, and her vehicle was so damaged that it could not continue. Duran tried to continue leaving the scene, but an eyewitness detained her until the police arrived. Disputes over damage to a bumper, location of the collision, speed of a vehicle, ability to turn right, and whether Duran was so drunk that an ordinary person would be unconscious do not change any of these fundamental facts. Duran has failed to establish the actual innocence needed to excuse the statute of limitations.

**E.     Duran may show that equitable tolling is warranted**

Section 2244(d) is subject to equitable tolling.[33] "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."[34] Equitable tolling does not stop the limitations clock the way that statutory tolling does.

---

[31] ECF No. 1-1 at 3-5.

[32] *Bousley*, 523 U.S. at 623.

[33] *Holland v. Florida*, 560 U.S. 631, 645 (2010).

[34] *Id*. at 649 (quoting *Pace*, 544 U.S. at 418).

9

> First, for a litigant to demonstrate "he has been pursuing his rights diligently," *Holland*, 560 U.S. at 649 [. . .], and thus satisfies the first element required for equitable tolling, he must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court.[35]

"[I]t is not enough for a petitioner seeking an exercise of equitable tolling to attempt diligently to remedy his extraordinary circumstances; when free from the extraordinary circumstance, he must also be diligent in actively pursuing his rights."[36] "Second, and relatedly, it is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy."[37]

Duran does not make an argument for equitable tolling in her petition. I will give her an opportunity to make such an argument in her showing of cause.

## IV. Conclusion

I THEREFORE ORDER the clerk of the court to file the petition for a writ of habeas corpus.

I FURTHER ORDER that Duran will have until **July 16, 2021** to show cause why I should not dismiss this action as untimely. Failure to timely comply with this order will result in the dismissal of this action without further notice.

I FURTHER ORDER the clerk to add Aaron Ford, Attorney General for the State of Nevada, as counsel for the respondents.

---

[35] *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir.) (en banc), *cert. denied*, 141 S. Ct. 878 (2020).
[36] *Id.* at 599.
[37] *Id.*

I FURTHER ORDER the respondents' counsel to enter a notice of appearance by **June 18, 2021**, but no further response will be required from the respondents until further order of the court.

I FURTHER ORDER the clerk to provide copies of this order and all prior filings to the Attorney General in a manner consistent with the clerk's current practice, such as regeneration of notices of electronic filing.

DATED this 27th day of May, 2021.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE